1

2

3

4                            UNITED STATES DISTRICT COURT

5                          NORTHERN DISTRICT OF CALIFORNIA

6

7    SAMSUNG ELECTRONICS CO, LTD., et        Case No. 24-cv-06567-JST
     al.,

8                    Plaintiffs,             **ORDER GRANTING DEFENDANT CM
                                             HK, LTD.'S MOTION TO DISMISS**
9           v.
                                             Re: ECF No. 51
10   CM HK, LTD.,

11                   Defendant.

12

13          Pending before the Court is Defendant's motion to dismiss.  ECF No. 51.  The Court will

14   grant the motion.

15   **I.      BACKGROUND**

16          This case is one of many patent infringement disputes between Plaintiffs Samsung

17   Electronics Co., Ltd. ("SEC") and Samsung Electronics America, Inc. ("SEA") (collectively,

18   "Samsung"), Defendant CM HK, Ltd. ("CM HK"), and non-party CyWee Group Ltd.

19   ("CyWee").[1]  SEC is a Korean corporation with its principal place of business in Korea; SEA is a

20   New York corporation with its principal place of business in New Jersey; CM HK is a Chinese

21   corporation with its principal place of business in Hong Kong; and CyWee is a British Virgin

22   Islands corporation with its principal place of business in Taipei.  ECF No. 24 ("Compl") ¶¶ 5–8.

23          In February 2017, CyWee filed suit against Samsung in the Eastern District of Texas, Case

24   No. 2:17-cv-00140-RSW-RSP (the "2017 CyWee Action"), accusing Samsung of infringing U.S.

25   Patent Nos. 8,441,438 (the "'438 Patent") and 8,552,978 (the "'978 Patent").  Compl. ¶ 21.

26   CyWee also asserted the '438 and '978 Patents against Apple in this District, Case No. 4:14-cv-

27   _____

28   [1] CyWee was initially named as a defendant in this case, ECF Nos. 1, 24, but was voluntarily
     dismissed on February 20, 2025, ECF No. 64.

United States District Court
Northern District of California

1    01853, and against LGE and ZTE in the Southern District of California, Case Nos. 3:17-cv-01102,

2    3:17-cv-02130. *Id.* ¶¶ 14–16. In June 2018, Google filed petitions for *inter partes* review of the

3    '438 and '978 Patents, which Samsung joined. *Id.* ¶ 22. The Patent Trial and Appeal Board

4    ("PTAB") instituted the petitions in December 2018 and ultimately invalidated the challenged

5    claims. *Id.* In January 2024, the Federal Circuit affirmed the PTAB's decisions. *Id.*; *see also*

6    *CyWee Grp. Ltd. v. ZTE (USA), Inc.*, 90 F.4th 1358 (Fed. Cir. 2024).

7        In April 2024, "CyWee contacted Samsung to ask if Samsung would agree to a non-suit

8    with prejudice of all claims and counterclaims with each side bearing their costs and fees, stating

9    that CyWee had been 'financially decimated' by the [2017 CyWee Action]." Compl. ¶ 23; *see*

10   *also* ECF No. 58-2. That same month, "Defendants' counsel emailed counsel for Samsung

11   offering a covenant not to sue on all of CyWee's U.S. patents." Compl. ¶ 25; *see also* ECF No.

12   58-3.

13       In May 2024, "Defendants' counsel reiterated that CyWee would be unable to pay any fees

14   to Samsung [from the 2017 CyWee Action]." Compl. ¶ 28. Later that month, "Defendants'

15   counsel claimed via email that CM HK owns all CyWee patents other than the patents in the [2017

16   CyWee Action]." *Id.*; *see also* ECF No. 58-4 at 3. Defendants' counsel also "proposed a license

17   to Defendants' patent portfolio and sent a list of 82 patents and applications that either Defendants

18   or its affiliates own worldwide." Compl. ¶ 28.

19       In June 2024, "the parties held a telephonic conference where Defendants' counsel

20   represented that CM HK might transfer the patents back to CyWee for assertion in the U.S." *Id.*

21   ¶ 30.

22       "On July 25, 2024, Defendants' counsel informed Samsung via email that CyWee had

23   identified two patents they believed to be infringed by Samsung, both having been prosecuted with

24   art from the IPRs." *Id.* ¶ 32; *see also* ECF No. 58-6 at 3. "In that same email[,] Defendants'

25   counsel stated that claim charts and other due diligence would be completed 'soon' and once again

26   noted an intention to ask the court in the [2017 CyWee Action] to grant a motion to amend the

27   complaint to add those two patents." Compl. ¶ 32; *see also* ECF No. 58-6 at 3. Four days later,

28   "CyWee proposed a meeting in Korea to go over new patents to be asserted and reiterated that the

United States District Court
Northern District of California

patents w[]ere those that issued after the IPRs, and all included the disclosure of the IPR prior art." Compl. ¶ 33; *see also* ECF No. 58-6 at 2.  CyWee stated that it "would be able to present claim charts at the meeting and that "if Samsung refused to meet, [] CyWee would file suit on these patents or seek to amend the current suit in the Eastern District of Texas."  Compl. ¶ 33; *see also* ECF No. 58-6 at 2.

On July 31, 2024, Samsung filed a motion to dismiss the 2017 CyWee Action "in light of the PTAB holding all asserted claims [of the '438 and '978 Patents] unpatentable with the Federal Circuit affirming the decisions."  Compl. ¶ 35.  "That same day, Defendants' counsel sent an email to counsel for Samsung simply stating 'OK. Declaration of War accepted.'"  *Id*.[2]

"On August 2, 2024, Defendants' counsel requested a meet and confer stating that there were eight patents to be asserted against Samsung."  Compl. ¶ 36; *see also* ECF No. 58-6 at 2. "On August 13, 2024,  Defendants' counsel and Samsung's counsel met via telephone conference" and "Defendants' counsel stated that CM HK would not transfer patents back to CyWee."  Compl. ¶ 37.  Defendants' counsel also stated that CM HK "was planning to file a new lawsuit based on recently filed patents" and that "CM HK's representative Mr. Shey was available to meet with Samsung to discuss a license."  *Id*.

"On September 5, 2024, Defendants' counsel sent an email to counsel for Samsung once again asking if [Samsung] would accept service of CM HK's complaint, which [CM HK] claimed was 'ready to file.'"  *Id*. ¶ 41.  "On September 10, 2024, Defendants' counsel sent an email regarding negotiations for the bill of costs in the [2017 CyWee Action]" stating "that CyWee opposed but offered to 'carry' $25,000 of costs to be payable upon conclusion of the CM HK lawsuit."  *Id*. ¶ 42.  The email "once again asked Samsung to accept service of the new lawsuit . . . ."  *Id*.

"On September 11, 2024, Defendants' counsel further confirmed that the owners of CyWee (on information and belief, Softbank China) own approximately 40% of CM HK and reiterated that CM HK planned to assert patents that issued after the IPRs, which cited the IPR art

---

[2] On August 13, 2024, CyWee responded to Samsung's motion to dismiss and "stat[ed] it did not oppose."  *Id*. ¶ 38.  The 2017 CyWee Action was dismissed on August 14, 2024.  *Id*.

1     and opinions . . . ." *Id*. ¶ 43.

2         On September 18, 2024, Samsung filed suit against CM HK and CyWee, seeking

3     declaratory judgment of non-infringement of U.S. Patent Nos. 10,275,038 (the "'038 Patent"),

4     10,817,072 (the "'072 Patent"), 10,852,846 (the "'846 Patent"), and 11,698,687 (the "'687

5     Patent") (collectively, the "Asserted Patents").  ECF No. 1.  The Asserted Patents are in the same

6     patent family as the previously asserted '438 and '978 Patents.  Compl. ¶ 15.

7         On October 31, 2024, CM HK filed suit against Samsung in the Eastern District of Texas,

8     accusing Samsung of infringing the '846 and '687 Patents.  ECF No. 50 ¶ 1.

9         On January 28, 2025, CM HK and CyWee moved to dismiss Samsung's complaint.  ECF

10    Nos. 51, 52.  On February 20, 2025, Samsung filed a notice of voluntary dismissal as to CyWee

11    based on representations made in CyWee's reply brief regarding CyWee's rights to the Asserted

12    Patents.  ECF No. 64 at 2.

13    **II.     LEGAL STANDARD**

14         **A.     Rule 12(b)(1)**

15         A motion to dismiss under Rule 12(b)(1) tests the subject matter jurisdiction of the court.

16    *See* Fed. R. Civ. P. 12(b)(1).  If a plaintiff lacks Article III standing to bring a suit, the federal

17    court lacks subject matter jurisdiction, and the suit must be dismissed under Rule 12(b)(1).

18    *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004).  "A Rule 12(b)(1) jurisdictional

19    attack may be facial or factual.  In a facial attack, the challenger asserts that the allegations

20    contained in a complaint are insufficient on their face to invoke federal jurisdiction.  By contrast,

21    in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would

22    otherwise invoke federal jurisdiction."  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th

23    Cir. 2004) (citation omitted).  In resolving a facial attack, the court assumes that the allegations are

24    true and draws all reasonable inferences in the plaintiff's favor.  *Wolfe v. Strankman*, 392 F.3d

25    358, 362 (9th Cir. 2004).  A court addressing a facial attack must confine its inquiry to the

26    allegations in the complaint.  *See Savage v. Glendale Union High Sch., Dist. No. 205, Maricopa

27    Cnty.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003).

28

United States District Court
Northern District of California

### B.    Rule 12(b)(2)

When a defendant objects to the Court's personal jurisdiction over it pursuant to Federal Rule of Civil Procedure 12(b)(2), "the plaintiff bears the burden of establishing that jurisdiction is proper." *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008).  Absent an evidentiary hearing, however, the plaintiff need only make a prima facie showing of personal jurisdiction.  *Id.* "Uncontroverted allegations in the plaintiff's complaint must be taken as true", and "[c]onflicts between the parties over statements contained in affidavits must be resolved in the plaintiff's favor." *Id.* (quoting *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004)).  "Where, as here, there is no applicable federal statute governing personal jurisdiction, the district court applies the law of the state in which the district court sits." *Schwarzenegger*, 374 F.3d at 800.  "Because California's long-arm jurisdictional statute is coextensive with federal due process requirements, the jurisdictional analyses under state law and federal due process are the same." *Id.* at 800–01.

### C.    Rule 12(b)(6)

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).  A complaint need not contain detailed factual allegations, but facts pleaded by a plaintiff "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations and citation omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  The Court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Knievel*, 393 F.3d at 1072.  However, the Court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or

1  unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008)

2  (quotations and citation omitted).

3  **III.    DISCUSSION**

4      CM HK moves to dismiss Samsung's complaint on three grounds: (1) lack of subject

5  matter jurisdiction under Rule 12(b)(1); (2) lack of personal jurisdiction under Rule 12(b)(2); and

6  (3) failure to state a claim under Rule 12(b)(6).  ECF No. 51 at 7.  The Court addresses each

7  argument in turn.

8      **A.    Subject Matter Jurisdiction**

9      CM HK argues that "Samsung cannot meet the constitutional requirement of a concrete,

10  immediate case or controversy because Samsung's complaint fails to identify any instance in

11  which CM HK accused Samsung of infringing the four patents at issue prior to Samsung filing

12  suit."  ECF No. 51 at 7.  CM HK argues in the alternative that "Samsung's race to the

13  courthouse—filed to preempt CM HK's subsequent suit in the Eastern District of Texas—

14  epitomizes 'anticipatory' litigation disfavored by courts" and "justifies dismissal under both the

15  Declaratory Judgment Act and the first-to-file rule."  *Id.*

16      **1.    Case or Controversy**

17      "The Declaratory Judgment Act provides that, '[i]n a case of actual controversy within its

18  jurisdiction [] any court of the United States [] may declare the rights and other legal relations of

19  any interested party seeking such declaration, whether or not further relief is or could be sought.'"

20  *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126 (2007) (quoting 28 U.S.C. § 2201(a)).

21  "[T]he phrase 'case of actual controversy' . . . refers to the type of 'Cases' and 'Controversies' that

22  are justiciable under Article III."  *MedImmune*, 549 U.S. at 127 (quoting *Aetna Life Ins. Co. v.*

23  *Haworth*, 300 U.S. 227, 240 (1937)).  "[W]ithout a case or controversy, there cannot be a claim

24  for declaratory relief."  *Apple Inc. v. VoIP-Pal.com, Inc.*, 506 F. Supp. 3d 947, 967 (N.D. Cal.

25  2020).  In a declaratory judgment action, a court has subject matter jurisdiction "when 'the facts

26  alleged, under all the circumstances, show that there is a substantial controversy, between parties

27  having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a

28  declaratory judgment.'"  *Id.* (quoting *MedImmune*, 549 U.S. at 127).  "Under the 'all the

circumstances' test, courts have 'unique and substantial discretion in deciding whether to declare the rights of litigants.'" *Apple*, 506 F. Supp. 3d at 967 (quoting *MedImmune*, 549 U.S. at 136).

"In case law following *MedImmune*, the Federal Circuit has explained that, in the context of patent disputes, an actual controversy requires 'an injury in fact traceable to the patentee,' which requires 'both (1) an affirmative act by the patentee related to the enforcement of his patent rights and (2) meaningful preparation to conduct potentially infringing activity.'" *Apple*, 506 F. Supp. 3d at 967 (quoting *Assoc. for Molecular Pathology v. U.S. Patent & Trademark Office*, 689 F.3d 1303, 1318 (Fed. Cir. 2012), *rev'd in part on other grounds by Assoc. for Molecular Pathology v. Myriad Genetics, Inc.*, 569 U.S. 576, 133 S.Ct. 2107, 186 L.Ed.2d 124 (2013)). Courts in this District have identified "at least thirteen factors" relevant to first prong of the inquiry:

> (1) the strength of threatening language in communications between the parties; (2) the depth and extent of infringement analysis conducted by the patent holder; (3) whether the patent holder imposed a deadline to respond; (4) any prior litigation between the parties; (5) the patent holder's history of enforcing the patent at issue; (6) whether the patent holder's threats have induced the alleged infringer to change its behavior; (7) the number of times the patent holder has contacted the alleged infringer; (8) whether the patent holder is a holding company with no income other than enforcing patent rights; (9) whether the patent holder refused to give assurance it will not enforce the patent; (10) whether the patent holder has identified a specific patent and specific infringing products; (11) the extent of the patent holder's familiarity with the product prior to suit; (12) the length of time that transpired after the patent holder asserted infringement; and (13) whether communications initiated by the plaintiff appear as an attempt to create a controversy.

*Twitter, Inc. v. VoIP-Pal.com, Inc.*, No. 21-CV-02769-LHK, 2021 WL 5085959, at *8 (N.D. Cal. Nov. 2, 2021) (quoting *Cepheid v. Roche Molecular Systems, Inc.*, Case No C-12-4411 EMC, 2013 WL 184125, at *6 (N.D. Cal. Jan. 17, 2013)).

CM HK argues that Samsung has not pled CM HK took affirmative action related to the enforcement of its patent rights. CM HK specifically argues that "Samsung's complaint fails to identify a single communication from CM HK that ever identified a specific patent or claim" and that "CM HK's general mention of two unidentified patents 'believed to be infringed' does not create an 'actual case or controversy' regarding the four patents at issue in the complaint." *Id.* at

1    11. Samsung counters that "statements by Defendants' counsel cited in the complaint identified

2    all four [Asserted Patents]." ECF No. 58 at 14. The Court agrees with Samsung.

3           As pled in the complaint, CM HK and CyWee "stated [an] intention to file a patent

4    infringement suit against Samsung" in at least nine emails and two phone calls. Compl. ¶¶ 44; *see*

5    *also id*. ¶¶ 32–34, 36–37, 40–42. The complaint specifically alleges that "[o]n July 25, 2024,

6    Defendants' counsel informed Samsung via email that CyWee had identified two patents they

7    believed to be infringed by Samsung, both having been prosecuted with art from the IPRs[,]" *id*.

8    ¶ 32, and four days later, CyWee proposed a meeting in Korea to "go over new patents to be

9    asserted and reiterated that the patents w[]ere those that issued after the IPRs, and all included the

10   disclosure of the IPR prior art[,]" *id*. ¶ 33. CyWee further represented that it would be able to

11   present claim charts at the meeting. *Id*. According to Samsung, "only the four [Asserted Patents]

12   fit th[e] criteria [of having been prosecuted with art from the IPRs]." ECF No. 58 at 13; *see also*

13   Compl. ¶ 34.

14          Analyzing all the circumstances, the Court concludes that CM HK engaged in affirmative

15   acts sufficient to confer jurisdiction over Samsung's declaratory judgment claims for non-

16   infringement of the Asserted Patents. The Court comes to this conclusion based on the strength of

17   the threatening language used in CM HK's communications (Compl. ¶¶ 32–33, 35–37, 40–42), the

18   depth of CM HK's infringement analysis (*id*. ¶¶ 32–33), the prior litigation between CyWee and

19   Samsung regarding the related '438 and '978 Patents (*id*. ¶¶ 22–23), CyWee's history of enforcing

20   the related '438 and '978 Patents (*id*. ¶¶ 15–16), the number of times CM HK contacted Samsung

21   via email and phone (*id*. ¶¶ 25–44), CM HK's identification of alleged infringing products (*id*.

22   ¶¶ 33, 41), and the two to three-month time period that elapsed between CM HK's threats and the

23   filing of Samsung's lawsuit. *See Cepheid*, 2013 WL 184125, at *6. Accordingly, the Court finds

24   it has subject jurisdiction over Samsung's claim for declaratory judgment of noninfringement of

25   the Asserted Patents.[3]

26   _____

27   [3] The parties do not dispute the second prong of the analysis (i.e., whether there was meaningful
     preparation to conduct potentially infringing activity). However, to the extent such a dispute
28   exists, the Court finds the second prong is satisfied. *See Apple*, 506 F. Supp. 3d at 967 ("In the
     instant case, the parties do not dispute the second factor because Apple already markets the

United States District Court
Northern District of California

### 2.    First-to-File Rule

In deciding "whether a suit for declaration of patent rights should yield to a later-filed infringement suit," a court's "discretion is guided by the first-to-file rule, whereby the forum of the first-filed case is favored." *Commc'ns Test Design, Inc. v. Contec, LLC*, 952 F.3d 1356, 1362 (Fed. Cir. 2020) (quotations and citation omitted). "The first-to-file rule is a doctrine of federal comity, intended to avoid conflicting decisions and promote judicial efficiency, that generally favors pursuing only the first-filed action when multiple lawsuits involving the same claims are filed in different jurisdictions." *Id*. (quotations and citation omitted). However, "[a] district court may depart from the first-to-file rule where, for example, the first suit was filed in bad faith, is an anticipatory suit, or is the result of forum shopping." *Easton-Bell Sports, Inc. v. E.I. DuPont de Nemours & Co.*, No. 13-CV-00283 NC, 2013 WL 1283463, at *3 (N.D. Cal. Mar. 26, 2013). "The exception for anticipatory suits is founded on a concern that the plaintiff should not be deprived of its traditional choice of forum because a defendant with notice of an impending suit first files a declaratory relief action over the same issue in another forum." *Id*. (citation omitted). "Generally[,] a suit is anticipatory when the plaintiff filed its suit upon receipt of specific, concrete indications that a suit by the defendant was imminent." *Id*.

CM HK asks the Court to invoke the anticipatory suit exception and depart from the first-to-file rule. CM HK argues that Samsung's lawsuit is "an example of bad faith, anticipatory suit, and forum shopping" and was "filed to preempt CM HK's subsequent suit in the Eastern District of Texas." ECF No. 51 at 21, 7. Samsung argues that the anticipatory suit exception does not apply here, as the "equivocal statements and actions by Defendants did not rise to the level of 'concrete indications that a suit by the defendant was imminent.'" Dkt. No. 58 at 15. (quoting *Ward v. Follett Corp.*, 158 F.R.D. 645, 648 (N.D. Cal. 1994)). The Court agrees with Samsung.

CM HK's communications with Samsung from May through September of 2024 equivocated as to whether suit by CM HK was imminent. In May 2024, "Defendants' counsel proposed a license to Defendants' patent portfolio and sent a list of 82 patents and applications

products and services at issue.").

9

that either Defendants or its affiliates own worldwide." Compl. ¶ 28.  In June 2024, counsel for

CM HK and CyWee "referred to amending the complaint in the [2017 CyWee Action] to add

additional patents." *Id*. ¶ 29.  In July 2024, "Defendants' counsel informed Samsung via email

that CyWee had identified two patents they believed to be infringed by Samsung" and "noted an

intention to ask the court in the [2017 CyWee Action] to grant a motion to amend the complaint to

add those two patents." *Id*. ¶ 32.  Later that month, "Defendants' counsel . . . proposed a meeting

in Korea to go over new patents to be asserted" and "stated that if Samsung refused to meet, that

CyWee would file suit on these patents or seek to amend the current suit in the Eastern District of

Texas." *Id*. ¶ 33.  No such meeting was held, and despite the passing of this deadline, CM HK did

not file suit.  CM HK instead continued threatening Samsung with litigation but without providing

a deadline on which it would file suit.  *See id*. ¶¶ 37, 41.  In fact, CM HK did not file its lawsuit

until October 31, 2024—more than six weeks after Samsung filed this lawsuit. ECF No. 50 ¶ 1.

        The Court finds that "[t]hese facts are not specific and concrete indications of an imminent

suit by [CM HK]." *Easton-Bell Sports, Inc.*, 2013 WL 1283463, at *3.  Courts considering

comparable facts have found similarly. *See Sony Computer Ent. Am. Inc. v. Am. Med. Response,

Inc.*, No. C06 06603 CW, 2007 WL 781969, at *3 (N.D. Cal. Mar. 13, 2007) ("Furthermore,

because [d]efendant's deadline in the April letter passed with no action by [d]efendant, [p]laintiff

could not be certain whether [d]efendant's threat of suit in the October letter was idle, real, or a

negotiating tactic."); *Intersearch Worldwide, Ltd. v. Intersearch Grp., Inc.*, 544 F. Supp. 2d 949,

960 (N.D. Cal. 2008) ("[A] reasonable apprehension that a controversy exists sufficient to satisfy

the constitutional requirements for a declaratory judgment action [] is not equivalent to an

imminent threat of litigation."). *Cf. Commc'ns Test Design, Inc. v. Contec, LLC*, 952 F.3d 1356,

1363 (Fed. Cir. 2020) (finding plaintiff's lawsuit anticipatory where defendant "sent [plaintiff] a

draft complaint and told [plaintiff] that it would file suit if [plaintiff] did not confirm by [deadline]

that it was willing to discuss the terms of a potential license[,]" plaintiff confirmed it was willing

to engage in licensing conversations on the day of the deadline, but plaintiff filed a declaratory

judgment action two days later); *Zoho Corp. Pvt. Ltd. v. HubSpot, Inc.*, No. 20-CV-01573-RS,

2020 WL 7133770, at *4 (N.D. Cal. Apr. 24, 2020) ("[Plaintiff's] counsel lulled [defendant] into

believing that it needed time to review [defendant's] letter, consult with its client, and respond

. . . . [Plaintiff] indicated that it would need more than a week to do so, and it was reasonable for

[defendant] to await a response and hold off from filing its suit . . . . However, instead of, for

example, opening a settlement dialogue, [plaintiff] sued [defendant].") (quotations and citations

omitted).  Accordingly, the Court denies CM HK's motion to dismiss on this ground.

### B.    Personal Jurisdiction

"Personal jurisdiction must exist for each claim asserted against a defendant." *Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1180 (9th Cir. 2004) (citation omitted). Since the Supreme Court's "seminal decision in *International Shoe*," courts "have recognized two types of personal jurisdiction: 'general' (sometimes called 'all-purpose') jurisdiction and 'specific' (sometimes called 'case-linked') jurisdiction." *Bristol-Myers Squibb Co. v. Super. Ct.*, 582 U.S. 255, 261–62 (2017) (citation omitted).  CM HK argues that the Court lacks both general and specific jurisdiction over CM HK.  Samsung makes two counterarguments: (1) CM HK's threats to sue Samsung confer specific jurisdiction over CM HK, and (2) the Court's specific jurisdiction over CyWee should be imputed to CM HK under an alter ego theory.  ECF No. 58 at 17–23.

### 1.    General Jurisdiction

"A court with general jurisdiction may hear any claim against that defendant, even if all the incidents underlying the claim occurred in a different [s]tate." *Bristol-Myers Squibb*, 582 U.S. at 262.  "Because the assertion of judicial authority over a defendant is much broader in the case of general jurisdiction than specific jurisdiction, a plaintiff invoking general jurisdiction must meet an 'exacting standard' for the minimum contacts required." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1069 (9th Cir. 2015) (citation omitted).  "[G]eneral jurisdiction requires affiliations so continuous and systematic as to render the foreign corporation essentially at home in the forum [s]tate . . . ." *Daimler AG v. Bauman*, 571 U.S. 117, 134 n.11 (2014).  "Such contacts must be 'constant and pervasive.'" *Ranza*, 793 at 1069 (quoting *Daimler*, 571 U.S. at 122).  "The paradigmatic locations where general jurisdiction is appropriate over a corporation are its place of incorporation and its principal place of business." *Ranza*, 793 F.3d at 1069.  "Only in an exceptional case will general jurisdiction be available anywhere else." *Id*. (quotations and citation omitted).

1    CM HK argues that the Court does not have general jurisdiction, because CM HK "is not

2    incorporated in California, has no physical presence or operations [in California], does not own or

3    rent property in [California], and has no employees in California."  ECF No. 51 at 13.  Samsung

4    does not dispute this argument.  The Court finds that CM HK's contacts with California are not so

5    "continuous and systematic"  as to render CM HK "essentially at home" in California.  *Daimler*,

6    571 U.S. at 134.  Accordingly, the Court concludes it does not have general jurisdiction over CM

7    HK.

## 2.    Specific Jurisdiction

9    Specific jurisdiction "depends on an affiliation between the forum and the underlying

10   controversy, principally, activity or an occurrence that takes place in the forum [s]tate and is

11   therefore subject to the [s]tate's regulation."  *Goodyear Dunlop Tires Operations, S.A. v. Brown*,

12   564 U.S. 915, 919 (2011) (quotations and citation omitted).  In determining whether the exercise

13   of specific jurisdiction is consistent with due process, courts are to consider: "(1) whether the

14   defendant purposefully directed its activities at residents of the forum; (2) whether the claim arises

15   out of or relates to the defendant's activities with the forum; and (3) whether assertion of personal

16   jurisdiction is reasonable and fair."  *Xilinx, Inc. v. Papst Licensing GmbH & Co. KG*, 848 F.3d

17   1346, 1353 (Fed. Cir. 2017) (quotations and citation omitted).  "The first two factors correspond

18   with the 'minimum contacts' prong of the [*International Shoe Co. v. Washington*, 326 U.S. 310,

19   66 S.Ct. 154, 90 L.Ed. 95 (1945)] analysis, and the third factor corresponds with the 'fair play and

20   substantial justice' prong of the analysis."  *Id*. (citation omitted).  "While the plaintiff bears the

21   burden to establish minimum contacts, upon this showing, defendants must prove that the exercise

22   of jurisdiction is unreasonable."  *Elecs. For Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1350 (Fed.

23   2003).

24   Samsung alleges that the Court has specific jurisdiction over CM HK, because CM HK

25   "directed communications regarding enforcement of its patents to Samsung's counsel in

26   California" and "Samsung's claim arises out of or relates to [CM HK's] enforcement activities."

27   Compl. ¶ 11.  CM HK argues that its communications with Samsung's counsel do not satisfy the

28   "minimum contacts" prong because "nothing sent by CM HK through counsel was intentionally

United States District Court
Northern District of California

targeted toward a party residing in California." ECF No. 51 at 18. Samsung counters that "in the context of patent litigation, communications threatening suit or proposing settlement or patent licenses can be sufficient to establish personal jurisdiction." ECF No. 58 at 21 (quotations and citation omitted). The Court agrees with CM HK.

The Federal Circuit has explained that a defendant "purposefully directs his activities at residents of the forum when [he] sends a cease and desist letter to a potential plaintiff *in that particular forum*." *New World Int'l, Inc. v. Ford Glob. Techs., LLC*, 859 F.3d 1032, 1037 (Fed. Cir. 2017) (emphasis added). Here, neither SEC nor SEA are California corporations, and neither entity has a principal place of business in California. It appears that "the only connection to California is that Samsung's counsel happens to be located there." ECF No. 51 at 17. Samsung relies on *Lyft, Inc. v. Quartz Auto Techs. LLC*, No. 21-cv-01871-JST, 2021 WL 6618867, at *1 (N.D. Cal. Sept. 7, 2021) in arguing that "[c]ommunications *sent into a state* may create specific personal jurisdiction . . . ." ECF No. 58 at 21 (emphasis added). But unlike Samsung, the plaintiff in *Lyft* was headquartered in California. *Lyft*, 2021 WL 6618867, at *1. The remaining cases on which Samsung relies are similarly distinguishable. *See Berkeley Lights, Inc. v. AbCellera Biologics Inc.*, No. 20-CV-05957-JSW, 2021 WL 4497874, at *1 (N.D. Cal. Jan. 29, 2021) (plaintiff was "headquartered in California"); *Square, Inc. v. Morales*, No. C 13-01431 SBA, 2013 WL 6199281 (N.D. Cal. Nov. 27, 2013) (plaintiff was a "California corporation with its principal place of business in San Francisco"). Samsung has not shown that CM HK "purposefully directed its activities" at California residents. Accordingly, the Court finds that CM HK's communications with Samsung's counsel do not give rise to specific jurisdiction over CM HK.

### 3.     Alter-Ego Theory

Samsung argues in the alternative that the Court has specific jurisdiction over CyWee and such jurisdiction should be imputed to CM HK. To succeed on this argument, Samsung must show that (1) the Court has specific jurisdiction over CyWee and (2) CM HK is the alter ego of CyWee.

### a.     Personal Jurisdiction Over CyWee

As stated above, in determining whether the exercise of specific jurisdiction comports with

due process, courts consider: "(1) whether the defendant purposefully directed its activities at residents of the forum; (2) whether the claim arises out of or relates to the defendant's activities with the forum; and (3) whether assertion of personal jurisdiction is reasonable and fair." *Xilinx, Inc.*, 848 F.3d at 1353 (quotations and citation omitted); *see supra* Section III.B.2. "When the plaintiff is bringing a declaratory judgment for non-infringement, the claim 'arises out of or relates to the activities of the defendant patentee in enforcing the patent or patents in suit.'" *Apple*, 506 F. Supp. 3d at 962 (quoting *Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324, 1328 (Fed. Cir. 2008)). "The relevant inquiry for specific personal jurisdiction then becomes to what extent has the defendant patentee 'purposefully directed [such enforcement activities] at residents of the forum,' and the extent to which the declaratory judgment claim 'arises out of or relates to those activities.'" *Apple*, 506 F. Supp. 3d at 962 (quoting *Avocent*, 552 F.3d at 1328).

Prior to its dismissal, CyWee argued that "Samsung failed to demonstrate that CyWee ha[d] sufficient minimum contacts with California for the Court to exercise specific jurisdiction." ECF No. 52 at 10. CyWee specifically argued that it "ha[d] not had any California business operations since March 24, 2014," its communications with Samsung's San Diego-based counsel were insufficient to support specific jurisdiction, and its prior lawsuits were not "intentionally directed at California." *Id.* at 9–13. Samsung countered that "CyWee had sufficient contacts in the NDCA to confer specific jurisdiction by virtue of the three separate litigations it brought in California and agreements it has made consenting to jurisdiction here." ECF No. 60 at 16. The Court agrees with Samsung.

Although CM HK's contacts with California are not sufficient to confer specific jurisdiction over CM HK, CyWee's California contacts are far more extensive. In 2014, CyWee filed suit against Apple in this District for alleged infringement of the related '438 and '978 Patents, and in 2017, CyWee filed suit against LGE and ZTE in the Southern District of California for alleged infringement of the same patents. *Id.* ¶¶ 15–16. Courts in this District have found that "[a] defendant's previous assertion of patents in the forum easily qualifies as an enforcement activity that is 'purposefully directed' at the forum." *Twitter, Inc.*, 2021 WL 5085959, at *12; *see also Apple*, 506 F. Supp. 3d at 963 (finding defendant's prior litigation in the district regarding

related patents "demonstrate[d] that [d]efendant ha[d] purposefully directed its enforcement activities towards the forum state"); *Ebates Performance Mktg., Inc. v. MyMail, Ltd.*, No. 20-CV-04768-LHK, 2021 WL 121130, at *10 (N.D. Cal. Jan. 13, 2021) ("[T]he fact that a defendant has engaged in judicial patent enforcement (with respect to the patents at issue or a related patent) in the same district can support personal jurisdiction.") (quotations and citation omitted).

CyWee also executed a Settlement and License Agreement with Apple in 2017, in which CyWee granted Apple a nonexclusive license and "explicitly refer[red] to CyWee conducting business in the NDCA . . . ." ECF No. 59-3 at 11. The agreement further "state[d] that CyWee: 'consents and submits to jurisdiction and venue in the federal and state courts located within Santa Clara County, California, with respect to any dispute arising out of or relating in any way to this Agreement.'" *Id*. Courts have found similar licensing agreements to be related to a patentee's enforcement activity. *See ActiveVideo Networks, Inc. v. Trans Video Elecs., Ltd.*, 975 F. Supp. 2d 1083, 1098 (N.D. Cal. 2013) ("[W]hile a patent holder's commercialization activity does not count as patent enforcement activity, here, [defendant] admits that the licenses resulted from patent infringement suits that [defendant] brought against the respective companies, not part of the regular business of commercialization. Thus, the licenses are related to patent enforcement activity."). The Court therefore finds CyWee's 2014 lawsuit against Apple and subsequent licensing agreement to be an enforcement activity "purposefully directed" at residents of this forum.

Samsung seeks declaratory judgment of noninfringement for patents related to those CyWee previously asserted against Apple in this District. The Court therefore finds that Samsung's declaratory judgment action "arises out of or relates to" CyWee's enforcement activities. *See Ebates Performance Mktg.*, 2021 WL 121130, at *9 ("A declaratory judgment claim arises out of the patentee's contacts with the forum state only if those contacts 'relate in some material way to the enforcement or the defense of the patent.'") (quoting *Maxchief Invs. Ltd. v. Wok & Pan, Ind.*, Inc., 909 F.3d 1134, 1138 (Fed. Cir. 2018)). Accordingly, the Court finds

1    CyWee's contacts with California are sufficient to confer specific jurisdiction over CyWee.[4]

2            **b.     CM HK As Alter Ego of CyWee**

3            "[I]f a corporation is the alter ego of an individual defendant, or one corporation the alter

4    ego of another, the [c]ourt may pierce the corporate veil jurisdictionally and attribute contacts

5    accordingly." *City & Cnty. of San Francisco v. Purdue Pharma L.P.*, 491 F. Supp. 3d 610, 635

6    (N.D. Cal. 2020) (quotations and citation omitted).  "In order to demonstrate that an alter ego

7    relationship exists, the plaintiff must make a prima facie case '(1) that there is such unity of

8    interest and ownership that the separate personalities [of the two entities] no longer exist and (2)

9    that failure to disregard [their separate identities] would result in fraud or injustice.'" *Id*. (quoting

10   *Ranza*, 793 F.3d at 1073.

11           "The first prong of the alter ego test requires a showing that the parent controls the

12   subsidiary to such a degree as to render the latter the mere instrumentality of the former."

13   *Chubchai v. AbbVie, Inc.*, 599 F. Supp. 3d 866, 874–75 (N.D. Cal. 2022).  "It requires such

14   'pervasive control' that it can only be met where a parent corporation 'dictates every facet of the

15   subsidiary's business—from broad policy decisions to routine matters of day-to-day operation.'"

16   *Id*. (citation omitted).  In determining whether the first prong has been satisfied, courts generally

17   consider nine factors: "(1) inadequate capitalization, (2) commingling of funds and other assets,

18   (3) disregard of corporate formalities and failure to maintain an arm's length relationship,

19   (4) holding out by one entity that is liable to the debts of the other, (5) identical equitable

20   ownership, (6) use of the same offices and employees, (7) lack of segregation of corporate records,

21   (8) manipulating assets between entities so as to concentrate the assets in one and the liabilities in

22   another, and (9) identical directors and officers." *Purdue Pharma*, 491 F. Supp. 3d at 635 (citing

23   *Daewoo Elecs. Am. Inc. v. Opta Corp.*, 875 F. 3d 1241, 1250 (9th Cir. 2017)).  "These factors help

24   determine whether the parent corporation totally controls the actions of the subsidiary so that the

25   subsidiary is the mere alter ego of the parent, such that the Court may exercise jurisdiction over

---

[4] CyWee does not dispute that the exercise of specific jurisdiction would be reasonable or fair.
*Elecs. For Imaging, Inc.*, 340 F.3d at 1350 (defendant bears the burden of showing specific
jurisdiction is unreasonable).

United States District Court
Northern District of California

both the parent and its subsidiary." *Purdue Pharma*, 491 F. Supp. 3d at 635 (quotations and citation omitted).

Samsung alleges the following:

- "Defendants disregard corporate formalities and fail to maintain an arm's length relationship. For example, Defendants concede that they have and will continue to transfer intellectual property assets back and forth." (Compl. ¶ 48);

- "CyWee transferred patents and patent applications, including the [Asserted Patents], to CM HK without consideration." (*Id*. ¶ 49);

- "Upon information and belief, CM HK assumed the liabilities of CyWee. On information and belief, Defendants transfer funds between their bank accounts to pay one another's expenses. For example, CyWee tied funds from the EDTX action to any eventual action filed by CM HK by offering to carry $25,000 of Samsung costs from the EDTX action until the end of the new CM HK suit. This offer to carry CyWee's costs was in exchange for Samsung making concessions to CM HK about service and discovery. Upon information and belief, this offer stems from the close relationship between the two companies." (*Id*. ¶ 50.);

- "Defendants have some of the same employees, directors, officers, and at least some common ownership. For example, Defendants' counsel confirmed that the owners of CyWee . . . own approximately 40% of CM HK. Defendants' counsel also confirmed that that Mr. Shey (also affiliated with CyWee as described above) had authority to make deals on behalf of CM HK. On information and belief, the CEO of CM HK is Shun-nan Liou who also is (or was) the R&D Director at CyWee." (*Id*. ¶ 51).

CM HK argues that these allegations are insufficient to satisfy the first prong of the analysis. More specifically, CM HK argues that "Samsung's allegations that CM HK and CyWee [] have 'some of the same employees, directors, officers, and ownership' are insufficient to show the level of pervasive control required to meet the first prong." ECF No. 51 at 15. CM HK represents that it is "wholly owned by CM Investment Inc.—not CyWee" and that "CyWee has a minority state in CM HK's great grand-parent company, CyWee Motion Group Ltd." *Id*. CM HK further represents that there is no "commingling of funds and CM HK observes corporate

1    formalities, including separate board meetings and records." *Id*.

2    Samsung has not shown that CyWee controls CM HK "to such a degree as to render [CM

3    HK] the mere instrumentality of [CyWee]." *Chubchai*, 599 F. Supp. 3d at 874–75.  Although

4    Samsung has pled the existence of overlap in employees, officers, and ownership, these allegations

5    alone are insufficient to establish a prima facie case that "that there is such unity of interest and

6    ownership that the separate personalities no longer exist." *Purdue Pharma L.P.*, 491 F. Supp. 3d

7    at 635; *see also Chubchai*, 599 F. Supp. 3d at 876 ("[T]he evidence shows only that AbbVie

8    wholly owns Zeltiq as a subsidiary, the two entities have overlapping officers and directors, web-

9    information, and shared office space, and that AbbVie has been involved in litigation as a parent

10    corporation. However, '[i]t is well-settled that common ownership is not dispositive.'") (citation

11    omitted).  *Cf. Google Inc. v. Rockstar Consortium U.S. LP*, No. C 13-5933 CW, 2014 WL

12    1571807, at *4 (N.D. Cal. Apr. 17, 2014) ("The circumstances here strongly suggest that Rockstar

13    formed MobileStar as a sham entity for the sole purpose of avoiding jurisdiction in all other fora

14    except MobileStar's state of incorporation (Delaware) and claimed principal place of business

15    (Texas).").  The Court finds Samsung has not satisfied the first prong of the alter ego analysis.

16    The Court need not reach the second prong of the analysis.

17    Having found that CM HK is not subject to this Court's specific jurisdiction under an alter

18    ego theory, the Court dismisses Samsung's complaint with leave to amend.  However, for the

19    reasons discussed below, *see infra* Section III.B.4, the Court grants Samsung's request for

20    jurisdictional discovery.

21                              **4.    Jurisdictional Discovery**

22    "A district court is vested with broad discretion to permit or deny [jurisdictional]

23    discovery." *Laub v. U.S. Dep't of Interior*, 342 F.3d 1080, 1093 (9th Cir. 2003).  The decision to

24    permit or deny jurisdictional discovery is reviewed for abuse of discretion.  *Boschetto v. Hansing*,

25    539 F.3d 1011, 1020 (9th Cir. 2008).  "[D]iscovery should be granted when . . . the jurisdictional

26    facts are contested or more facts are needed." *Laub*, 342 F.3d at 1093; *see also Boschetto*, 539

27    F.3d at 1020 (jurisdictional discovery may be appropriate "where pertinent facts bearing on the

28    question of jurisdiction are controverted or where a more satisfactory showing of the facts is

United States District Court
Northern District of California

18

necessary.").  In this District, courts have held that "a plaintiff need not make out a prima facie

case of personal jurisdiction before it can obtain jurisdictional discovery."  *Calix Networks, Inc. v.*

*Wi-Lan, Inc.*, No. 09-cv-06038-CRB (DMR), 2010 WL 3515759, at *4 (N.D. Cal. Sept. 8, 2010)

(citing *eMag Solutions, LLC v. Toda Kogyo Corp.*, No. 02-cv-1611-PJH, 2006 WL 3783548, at *2

(N.D. Cal. Dec. 21, 2006)) ("It would . . . be counterintuitive to require a plaintiff, prior to

conducting discovery, to meet the same burden that would be required to defeat a motion to

dismiss.").  A plaintiff must merely present "a 'colorable basis' for jurisdiction, or 'some

evidence' constituting a lesser showing than a prima facie case."  *Id.* (citations omitted).

Samsung contends that jurisdictional discovery "would reveal the extent of the connection

between CM HK and CyWee."  Dkt. No. 58 at 24.  The Court agrees.  Although Samsung's

allegations at this juncture are not sufficient to show that CM HK is acting as CyWee's alter ego,

the Court finds that Samsung has made a "colorable" showing of jurisdiction and that it is entitled

to jurisdictional discovery.  The Court is particularly concerned by the possible manipulation of

assets between CyWee and CM HK.  As alleged in the complaint, on May 20, 2024, Defendants'

counsel represented that "CM HK own[ed] all CyWee patents other than the patents in the [2017

CyWee Action]."  Compl. ¶ 28.  But on June 20, 2024, Defendants' counsel "represented that CM

HK might transfer the patents back to CyWee for assertion in the U.S."  *Id.* ¶ 30.  On August 13,

2024, Defendants' counsel represented that "CM HK would not transfer patents back to CyWee"

and that "CM HK was instead planning to file a new lawsuit . . . ."  *Id.* ¶ 37.  Additionally, as

reflected in the patent assignment attached to CyWee's motion to dismiss, the Asserted Patents

were not assigned to CM HK until September 28, 2024—ten days after Samsung filed this lawsuit.

*See* Dkt. No. 52-1.  The patent assignment further reflects that CM HK paid only ten dollars ($10)

for the rights to forty (40) patents and patent applications, including the Asserted Patents.[5]  *See*

Dkt. No. 52-1 at 27–31.  These allegations provide a "colorable basis" to believe there may be a

---

[5] CyWee assigned its U.S., Chinese, Taiwanese, Japanese, and European patents and patent applications to its subsidiary CyweeMotion HK Limited ("CyweeMotion HK") in March 2016. ECF No. 52-1 at 7–21.  In March 2017, CyweeMotion HK assigned these patents to CM HK.  *Id.* at 22–26.  This assignment did not include the Asserted Patents.  CyweeMotion HK assigned the Asserted Patents and thirty-six (36) other U.S. patents and patent applications to CM HK on September 24, 2024.  *Id.* at 27–31.

United States District Court
Northern District of California

commingling or manipulation of assets between CM HK and CyWee that would render CM HK the alter ego of CyWee. The Court concludes that jurisdictional discovery is warranted over CM HK. Discovery will be referred to a Magistrate Judge.

### C.    Failure to State a Claim Under Rule 12(b)(6)

In order to plead a claim for declaratory judgment of noninfringement, a plaintiff must allege "how each accused product or service specifically does not meet at least one claim limitation, such that it does not infringe the asserted patent." *Google LLC v. Sonos, Inc.*, No. C 20-06754 WHA, 2020 WL 6822880, at *2 (N.D. Cal. Nov. 20, 2020). A complaint "must go beyond only stating in conclusory terms that each accused product or service meets the elements of non-infringement." *Comcast Cable Commc'ns, LLC v. OpenTV, Inc.*, 319 F.R.D. 269, 273 (N.D. Cal. 2017). CM HK argues that Samsung has failed to plead noninfringement. ECF No. 51 at 21. More specifically, CM HK argues that Samsung has not "set forth factual allegations showing how each accused product or service specifically does not meet at least one claim limitation . . . ." *Id.* at 22 (citation omitted). Samsung has the better argument.

With respect to the '072 Patent, Samsung alleges that "[t]he accused Samsung mobile devices do not include or practice" at least the following claim limitation present in claims 1 and 10: "[m]apping resultant angles onto a plane selected based on orientation, where that orientation is derived from sensor fusion to obtain a trajectory; and recognizing user motion in three-dimensional space for character recognition." Compl. ¶ 70. The complaint further alleges that "[t]o the extent that Samsung mobile devices calculate trajectories or perform character recognition, the devices perform such operation without the need for angle mapping with sensor fusion data." *Id.*

With respect to the '038 Patent, Samsung alleges that "[t]he accused Samsung mobile devices do not include or practice" at least the following claim limitation present in claims 1 and 13: "recognizing user motion in three-dimensional space for character recognition." *Id.* ¶ 76. The complaint further alleges that "[t]o the extent that Samsung mobile devices perform character recognition, the devices perform such operation in two-dimensional space." *Id.*

With respect to the '846 Patent, Samsung alleges that "[t]he accused Samsung mobile

1    devices do not include or practice at least the following claim limitation present in claims 1 and 7:

2    "obtaining a quaternion by predicting axial accelerations; comparing predicted axial accelerations

3    with measured axial accelerations; and using predicted axial accelerations converted from

4    measured angular velocities." *Id.* ¶ 82. The complaint further alleges that "[t]o the extent that

5    Samsung mobile devices calculate quaternions using sensor data, such calculations utilize

6    measured angular velocity and acceleration." *Id.*[6]

7        The Court finds these allegations are sufficient to plead a claim for declaratory judgment of

8    noninfringement. Samsung has set forth at least one factual allegation explaining how the accused

9    products do not meet at least one claim limitation of each Asserted Patent. *Cf. Comcast*, 319

10   F.R.D. at 272 (finding plaintiff's claims "use[d] boilerplate language[,]" "contribut[ed] no factual

11   allegations" and "follow[ed] essentially the same format but plug[ged] in specific information for

12   (1) the patent number, (2) the name of the accused products or services, (3) the date of the

13   presentation that accused said products or services of infringement, and (4) the limitation allegedly

14   not met by the accused products or services"). Accordingly, the Court denies CM HK's motion to

15   dismiss on this ground.

16                                    **CONCLUSION**

17        For the foregoing reasons, the Court grants CM HK's motion to dismiss. The Court grants

18   Samsung leave to amend. CM HK may renew its challenge to personal jurisdiction after

19   jurisdictional discovery is complete.

20        The Court sets a case management conference on July 29, 2025, at 2:00 p.m. An updated

21   joint case management statement is due July 22, 2025. In their joint statement, the parties shall

22   propose a case schedule for the '038 and '072 Patents.

23        The parties may file a stipulated request to advance or continue the July 2025 case

24   management conference should circumstances warrant. A request to advance or continue should

25   / / /

26   / / /

27

28   _____

     [6] Samsung makes the same allegations with respect to claims 1, 14, and 27 of the '687 Patent. *Id.*
     ¶ 88.

United States District Court
Northern District of California

be made as a separate stipulation or motion and not merely included in a case management statement.

**IT IS SO ORDERED.**

Dated:  May 15, 2025



JON S. TIGAR
United States District Judge